JUDGE CARTER

26 CV 01422

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

**MOHAMED ALI,**
Plaintiff,

v. Civil Action No. _____

**SAPIENT CORPORATION,**
Defendant.

---

# COMPLAINT AND JURY DEMAND

Plaintiff Mohamed Ali, proceeding pro se, alleges as follows:

## I. JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.
3. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) because Defendant maintains a substantial office and leadership presence in this District, the adverse employment decisions at issue were made by New York–based management, and a substantial portion of the unlawful employment practices occurred in this District.
4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant.
5. The EEOC issued Plaintiff a Notice of Right to Sue on February 5, 2026, and Plaintiff files this action within ninety (90) days of receipt of that notice. A copy of the Notice is attached hereto as Exhibit A.

## II. PARTIES

6. Plaintiff Mohamed Ali is an individual residing in New York.
7. Defendant SAPIENT CORPORATION is a Delaware corporation authorized to do business in New York with offices in New York County.

# III. FACTUAL ALLEGATIONS

## A. Employment Background

8. Plaintiff began his employment with Defendant in or about May 2, 2022, as a Manager of Technology, initially assigned to Defendant's Virginia office.
9. Plaintiff later requested and was approved for a transfer to Defendant's Florida office after relocating for personal reasons.
10. Throughout his employment, Plaintiff worked in a 100% remote capacity. The protected activity and subsequent termination at issue arose from interactions with, and decisions involving, Sr. Director Aashish Adlakha, who was based in New York.
11. Plaintiff successfully completed client projects, received no disciplinary actions, performance warnings, or performance improvement plans.

## B. Repeated Name-Based Differential Treatment

12. From the beginning of Plaintiff's employment, Plaintiff was repeatedly either asked by colleagues and managers to be addressed by names other than his first name or was addressed by his last name without his consent, while similarly situated coworkers were addressed by their first names without question.
13. Plaintiff's first name, "Mohamed," is commonly associated with the Islamic faith. Plaintiff observed that employees whose names were not "Mohamed" were consistently addressed by their first names without being asked to adopt alternative names.
14. Plaintiff was initially surprised when the issue arose but tolerated the conduct and accepted alternative forms of address to maintain professionalism and avoid workplace conflict, despite believing the conduct was inappropriate.
15. As Plaintiff moved between different projects and teams, the same conduct recurred, including in circumstances where no other employee shared Plaintiff's name.
16. The repetition of this conduct over time caused Plaintiff to reasonably believe that he was being treated differently on the basis of religion.

## C. Project Placement Difficulties

17. Plaintiff was required to interview internally for placement on client projects in order to maintain utilization and avoid extended bench time.
18. Despite meeting stated qualifications, maintaining strong performance metrics, and expressing willingness to work across industries and relocate domestically or internationally, Plaintiff experienced difficulty securing project placements and was informed that there were no open projects, while, upon information and belief, Defendant was actively recruiting and hiring individuals with similar skill sets.
19. Plaintiff actively communicated with his staffing partners, managers, other staffing personnel, and other managers across the Company in an effort to obtain project assignments.

20. Despite possessing strong qualifications and relevant experience, Plaintiff encountered unusual difficulty securing project assignments. Plaintiff reasonably inferred that the repeated requests to avoid using his first name reflected bias that adversely affected decision-makers involved in staffing and contributed to his non-selection for projects.

### D. Protected Activity

21. On November 1, 2024, during an interview for placement on a new project with Sr. Director Aashish Adlakha, Mr. Adlakha addressed Plaintiff as "Ali," followed by asking whether it was acceptable to call him "Ali."
22. Plaintiff **objected** and stated that he wished to be addressed by his first name, as other employees were, and questioned why he was being treated differently.
23. On November 4, 2024, while Plaintiff was on approved paid time off (PTO), he was contacted by V.P. Thanumoorthy Sundaresan and asked to attend a meeting scheduled for November 5, 2024. Plaintiff initially believed the meeting concerned a potential project opportunity, as he had previously communicated with Mr. Sundaresan regarding securing placement.
24. The meeting ultimately occurred on November 7, 2024, as November 5, 2024 was Election Day, and was attended by Mr. Sundaresan and Human Resources representative Colleen Chance. During that meeting, Plaintiff was informed for the first time that his employment was being terminated due to alleged bench time.
25. During the termination meeting, Plaintiff expressly stated that he believed the true reason for his termination was his objection on November 1, 2024 to being asked to use a name other than his first name, "Mohamed," and that such conduct constituted religious discrimination and retaliation. Plaintiff specifically referenced his prior objection during his meeting with Sr. Director Aashish Adlakha. The Human Resources representative stated that the discrimination concern would be investigated separately, but that the purpose of the meeting was to effectuate Plaintiff's termination.
26. The close temporal proximity — three (3) business days — between Plaintiff's protected objection and the decision to terminate his employment is indicative of retaliatory motive. Plaintiff's objection and express statements during the meeting constitute protected activity under Title VII.
27. At no time prior to his November 1, 2024 objection did Defendant issue Plaintiff any disciplinary action, written warning, performance counseling, or notice that his employment was at risk.

### E. Retaliation and Termination

28. Plaintiff's termination date was November 7, 2024.
29. Defendant asserted that Plaintiff's termination was based on prolonged bench time.

### F. Pretext

30. Defendant's stated reason for termination is false and pretextual, as it contradicts Defendant's own internal timekeeping and performance tracking systems, which Plaintiff reviewed on a regular basis in connection with required time submissions.
31. During the period Defendant characterized as bench time, Plaintiff was on approved vacation, approved sick leave, company-directed training, interview preparation time, and public holidays.
32. Defendant's own internal timekeeping and utilization systems reflected total bench time materially less than the amount later asserted by Defendant.
33. Plaintiff was highly proactive in seeking placement, communicated with multiple staffing partners, and expressed willingness to travel, relocate domestically, or relocate internationally.
34. Shortly before Plaintiff's termination, Defendant assigned Plaintiff to company-directed artificial intelligence training, reflecting an expectation that Plaintiff would continue in his role.
35. Upon information and belief, at or around the time of Plaintiff's termination, Defendant was actively recruiting and hiring individuals with substantially similar skills and qualifications as Plaintiff.
36. The close temporal proximity between Plaintiff's protected activity and his termination supports an inference of retaliation.

## IV. COUNT I — RETALIATION (TITLE VII)

37. Plaintiff engaged in protected activity by opposing conduct he reasonably believed constituted religious discrimination.
38. Defendant subjected Plaintiff to an adverse employment action by terminating his employment.
39. Defendant terminated Plaintiff because of his protected activity and his opposition to religious discrimination.
40. Defendant's conduct violates 42 U.S.C. § 2000e-3(a).

## V. COUNT II — RELIGIOUS DISCRIMINATION (TITLE VII)

41. Plaintiff is Muslim and is a member of a protected class based on his religion. Plaintiff's first name, "Mohamed," is commonly associated with the Islamic faith.
42. Plaintiff was qualified for his position and for project placements.
43. Defendant subjected Plaintiff to adverse employment actions, including differential treatment in professional interactions, project placement difficulties, and termination of employment.
44. These actions occurred under circumstances giving rise to an inference of religious discrimination, including Defendant's repeated requests that Plaintiff adopt a name other

than "Mohamed" while other coworkers were addressed by their first names without question and were not required to adopt alternative names.
45. Defendant's conduct violates 42 U.S.C. § 2000e-2(a).

## VI. DAMAGES

46. As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of wages and benefits, emotional distress, humiliation, and reputational harm.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor;
B. Award back pay and lost benefits;
C. Award compensatory and punitive damages as permitted by law;
D. Award costs and, if applicable, attorney's fees pursuant to 42 U.S.C. § 2000e-5(k);
E. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Mohamed Ali                                            Dated: 2/18/2026
Mohamed Ali
400 W 153rd Street
Apt 5A
New York, NY 10031
Telephone: (917) 400-8999
Email: m_ali_alex@yahoo.com
Plaintiff, Pro Se

# EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Miami District Office
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/05/2026

**To:** Mr. Mohamed Ali
400 w 153rd st apt 5A
NEW YORK, FL 10031
Charge No: 510-2025-02176

EEOC Representative and email:   WIGBERTO PEREZ PEREZ
INVESTIGATOR
WIGBERTO.PEREZPEREZ@EEOC.GOV

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2025-02176.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
02/05/2026
Evangeline Hawthorne
Director

**Cc:**
Benjamin Yeaman
ben.yeamans@groupfivelegal.com

Please retain this Notice for your records.